**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**HERMAN PAUL BELLA**                          **CIVIL ACTION**

**versus**                                     **NO. 12-2323**

**BURL CAIN**                                  **SECTION: "I" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Herman Paul Bella, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On January 30, 2008, he was convicted of aggravated rape and

aggravated oral sexual battery under Louisiana law.[1]  On April 10, 2008, he was sentenced to life imprisonment on the aggravated rape conviction and to a term of twenty years imprisonment on the aggravated oral sexual battery conviction.  It was ordered that those sentences run consecutively and without benefit of probation, parole, or suspension of sentence.[2]  On October 23, 2009, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[3]  The Louisiana Supreme Court then denied his related writ application on May 21, 2010.[4]

On or about July 1, 2011, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on September 7, 2011.[6]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on January 17, 2012,[7] and by the Louisiana Supreme Court on August 22, 2012.[8]

---

[1]  State Rec., Vol. V of VI, trial transcript, pp. 607-08; State Rec., Vol. I of VI, minute entry dated January 30, 2008; State Rec., Vol. I of VI, jury verdict forms.

[2]  State Rec., Vol. V of VI, transcript of April 10, 2008; State Rec., Vol. I of VI, minute entry dated April 10, 2008.

[3]  State v. Bella, No. 2009 KA 0750, 2009 WL 3452833 (La. App. 1st Cir. Oct. 23, 2009); State Rec., Vol. I of VI.

[4]  State v. Bella, 36 So.3d 228 (La. 2010) (No. 2009-KO-2571); State Rec., Vol. I of VI.

[5]  State Rec., Vol. I of VI.

[6]  State Rec., Vol. I of VI, Order and Reasons dated September 7, 2011.

[7]  State v. Bella, No. 2011 KW 1928 (La. App. 1st Cir. Jan. 17, 2012); State Rec., Vol. II of VI.

[8]  State ex rel. Bella v. State, 97 So.3d 373 (La. 2012) (No. 2012-KH-0348); State Rec., Vol. II of VI.

Petitioner thereafter filed the instant federal application seeking *habeas corpus* relief.[9] The state concedes that the application is timely and that petitioner exhausted his remedies in the state courts.[10]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant

---

[9] Rec. Doc. 3.  Although petitioner filed this application in September of 2012, this case was not opened until November of 2014 when he paid the required filing fee.

[10] Rec. Doc. 9, p. 7.

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

- 4 -

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state

> criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law

and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S.

Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

> J.P., the victim, was born on April 18, 1990.[FN2]  When he was 11 months old, his mother, S.P., began a relationship with Darren Bella.  Their relationship lasted approximately six years, during which time they had two children together, who are J.P.'s half-siblings.  Darren Bella is the brother of the defendant.

> [FN2] In accordance with La. R.S. 46:1844W, the victim's identity will not be disclosed herein to protect his privacy.

> Between 1995 and 1998, Rose Lirette, the mother of Herman and Darren Bella, often cared for J.P. and his half-siblings at her

house in Gray, Louisiana.  The children actually lived there part of the time because their mother worked at night.  The defendant also lived at Rose's house while the children were living there.  At the time, the victim considered the defendant's brother to be his father, referred to the defendant as his uncle, and referred to Rose as "Maw Maw" Rose.

According to J.P., the defendant sexually abused him when he was about six or seven years of age.  The sexually abusive acts began while the victim was living in Terrebonne Parish at Rose's house and happened on five or six separate occasions during a period of approximately three months in 1997 and 1998.  The acts included fondling, oral sex, and anal sexual intercourse.

In May of 2006, the victim was hospitalized and diagnosed with condyloma, a sexually transmitted disease, and Burkitt's lymphoma, a form of cancer qualifying as a diagnosis of AIDS.  J.P. was 16 years old when he was diagnosed, which was about eight to nine years after the alleged sexual abuse took place.  Following his initial diagnosis of HIV, J.P. disclosed to his mother the sexual abuse perpetrated on him by the defendant.  His mother reported this to a social worker, who reported it to the police.[FN3]

> [FN3] During the trial, the defendant denied any sexual activity with the victim, stating he did not know why the victim made the allegations.  A physical examination and blood testing of the defendant was performed on February 13, 2007, at Chabert Medical Center.  The results were consistent with but not a conclusive diagnosis of condyloma, and the HIV testing was positive.[11]

---

[11]  State v. Bella, No. 2009 KA 0750, 2009 WL 3452833, at *1 (La. App. 1st Cir. Oct. 23, 2009); State Rec., Vol. I of VI.

### III.  Petitioner's Claims

### A.  Qualification of Expert

Petitioner's first claim is that the trial court erred in accepting Dr. Jamie Hanna as an expert witness at trial.  On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> In the first assignment of error, the defendant argues that the trial court erred in qualifying Dr. Hanna as an expert licensed physician in the field of pediatrics because she did not meet the criteria to be qualified as an expert witness in pediatrics.  Dr. Hanna had not completed her residency in pediatrics at the time of the trial, and she testified that the average time for an untreated HIV infection to develop into AIDS is approximately eleven years.  This testimony was in conflict with the testimony of the State's uncontested expert witness, Dr. Ronald Wilcox, who testified that it would be an average of five to seven years.  The defendant notes that the State did not address the methodology used by Dr. Hanna in arriving at the aforementioned average and contends the conflicting testimony confused the jury.  Finally, the defendant contends the admission of Dr. Hanna's testimony was not harmless since her estimate indicates that the victim could have become infected with HIV at the time of the instant offenses, while Dr. Wilcox's testimony suggests the victim was infected after the abuse in the instant case ceased.
>
> Dr. Hanna is a licensed physician who received her medical degree at the University of Alabama School of Medicine in 2005.  Dr. Hanna was also a resident at Louisiana State University from 2005 to the date of the trial in January 2008, practicing in pediatrics and psychiatry.  Dr. Hanna had completed two years of her three-year residency requirement and planned to complete a two-year fellowship in psychiatry upon completion of her residency.  The residency consisted of hospital work under another physician.
>
> The State offered Dr. Hanna as an expert resident in pediatrics and child psychiatry.  The defendant opposed the State's tender.  The trial court removed the jury and held a <u>Daubert</u> hearing.  The trial court noted that Dr. Hanna treated the victim, and it recognized Dr. Hanna as an expert in the general field of medicine, acknowledging her residency in the general field of pediatrics.

The trial judge has wide discretion in determining the competence of an expert witness, and his ruling on a witness's qualification will not be disturbed absent an abuse of that discretion. State v. Trahan, 576 So.2d 1, 8 (La. 1990).  In State v. Foret, 628 So.2d 1116, 1121-23 (La. 1993), the Louisiana Supreme Court clarified the trial judge's role under La. Code  Evid. art. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The Foret court explained that the trial judge, in ruling on the admissibility of scientific evidence, performs a "gatekeeping function in balancing the probative value of the evidence against its prejudicial effect."  Foret, 628 So.2d at 1123.

The Foret court adopted the guidelines set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-95, 113 S.Ct. 2786, 2796-98, 125 L.Ed.2d 469 (1993), for determining the reliability of expert scientific testimony.  In Daubert, the United States Supreme Court set a new standard to assist federal district courts in evaluating the admissibility of expert testimony.  The new standard required the district courts to perform a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589, 113 S.Ct. at 2795.  See State v. Chauvin, 2002-1188, p. 5 (La. 5/20/03), 846 So.2d 697, 700-01.  In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999), the United States Supreme Court held that the analysis established by Daubert is to be applied to determine the admissibility of all expert testimony, not just scientific testimony.

Daubert established the following non-exclusive factors to be considered by federal district courts to determine the admissibility of expert testimony:  (1) the "testability" of the scientific theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the methodology is generally accepted in the scientific community.  Daubert, 509 U.S. at 592-94, 113 S.Ct. at 2796-97.  In Chauvin, the Louisiana supreme court characterized the

Daubert factors as "observations" that provide a "helpful guide for our lower courts in considering this difficult issue." Chauvin, 2002-1188 at p. 5, 846 So.2d at 701.

In Cheairs v. State ex rel. Department of Transp. and Development, 2003-0680, p. 10 (La. 12/3/03), 861 So.2d 536, 542, the supreme court adopted a three-part inquiry to more fully assist district courts in determining all of the relevant issues related to the admissibility of expert testimony, with the Daubert analysis serving as one of the three prongs. This three-prong inquiry was first set forth in City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548 (11th Cir. 1998), in which the court stated that the admission of expert testimony is proper only if all three of the following things are true: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Harcros Chemicals, 158 F.3d at 562.

According to Dr. Hanna's testimony during the Daubert hearing, as a resident, she practiced as a licensed physician in patient care and hospitals. Dr. Hanna received training as a resident in the sub-specialties of general pediatrics and child psychiatry. She confirmed that she was in a position to give opinions regarding general medical information on the HIV virus and treatment and on condyloma. Dr. Hanna treated the victim in the field of pediatrics at the Children's Hospital. As noted by the defendant on appeal, Dr. Hanna testified that the average time it takes for untreated HIV to convert to AIDS is eleven years. She confirmed that she never examined the defendant or his medical records. She also admitted that she could not say with certainty that the victim contracted AIDS between 1996 and 1999, only that such a contraction was consistent with the AIDS-defining illness that the victim had and information provided by the victim. We do not find the differing opinions regarding the average time period for the conversion of untreated HIV to AIDS a determinative factor herein regarding Dr. Hanna's qualification as an expert witness on the subject. Considering Dr. Hanna's qualifications, methodology, and the assistance provided by her testimony, we find no abuse of the trial court's exercise of its broad discretion in its determination to allow Dr. Hanna to testify as

an expert in general medicine and pediatrics.  This assignment of error lacks merit.[12]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[13]

As an initial matter, this Court must note the limitations on the scope of its review regarding this claim.  Petitioner essentially invites this Court to examine whether the Louisiana courts correctly applied <u>Daubert</u>.  For the following reasons, that is an invitation which this Court may not accept.

"<u>Daubert</u> is not premised on the [federal] Constitution."  <u>Black v. Thomas</u>, No. 1:04-cv-567, 2006 WL 2547405, at *7 (M.D. Ala. Aug. 31, 2006); <u>accord</u> <u>Williams v. Withrow</u>, 328 F. Supp. 2d 735, 745 (E.D. Mich. 2004).  Rather, it has been noted:

> <u>Daubert</u> is an exegesis of Rule 702 of the Federal Rules of Civil Procedure and governs the admission of expert evidence in federal trials only.  <u>Daubert</u> does not bind the states, which are free to formulate their own rules of evidence subject only to the limits imposed by the Constitution.

<u>Kinder v. Bowersox</u>, 272 F.3d 532, 545 n.9 (8th Cir. 2001); <u>see also</u> <u>Norris v. Schotten</u>, 146 F.3d 314, 335 (6th Cir. 1998).  Accordingly, <u>Daubert</u> has no direct applicability to federal *habeas corpus* claims and cannot serve as a basis for the granting of *habeas* relief.  <u>See</u> <u>Keller v. Larkins</u>, 251 F.3d 408, 419 (3rd Cir. 2001); <u>Craig v. Cain</u>, Civ. Action No. 08-3486, 2009 WL 117010, at *9 (E.D. La. Jan. 14, 2009); <u>Stogner v. Cain</u>, Civ. Action No. 05-4317, 2008 WL 269078, at *13 (E.D. La. Jan.

---

[12]   <u>Bella</u>, 2009 WL 3452833, at *1-3; State Rec., Vol. I of VI.

[13]   <u>State v. Bella</u>, 36 So.3d 228 (La. 2010) (No. 2009-KO-2571); State Rec., Vol. I of VI.

30, 2008); <u>Payne v. Bobby</u>, No. 2:05-CV-050, 2006 WL 508784, at *23 (S.D. Ohio Feb. 27, 2006),

<u>adopted</u>, 2006 WL 2583380 (S.D. Ohio Sept. 6, 2006); <u>Hassinger v. Adams</u>, No. C 05-01011, 2006

WL 294798, at *13 n.6 (N.D. Cal. Feb. 7, 2006).

This Court is, of course, aware that the Louisiana Supreme Court has found <u>Daubert</u>

persuasive and, *as a matter of state law*, has similarly adopted a "requirement that expert scientific

testimony must rise to a threshold level of reliability in order to be admissible under La.C.E. art.

702." <u>State v. Foret</u>, 628 So.2d 1116, 1123 (La. 1993). The Louisiana Supreme Court continued:

"As we find the <u>Daubert</u> court's 'observations' on what will help to determine this threshold level of

reliability to be an effective guide, we shall adopt these 'observations', as well." <u>Id</u>. Nevertheless,

although <u>Foret</u> dictates that Louisiana courts use the <u>Daubert</u> considerations as a guide in

determining admissibility of scientific evidence, those courts are ultimately deciding whether the

evidence in a particular case is admissible under article 702 of the *Louisiana* Code of Evidence.

Therefore, a state court's decisions on such a matter concerns an issue of *state* law, and such state

law determinations simply are not reviewable in a federal *habeas corpus* proceeding. <u>See</u> <u>Little v.

Johnson</u>, 162 F.3d 855, 862 (5th Cir. 1998) ("In habeas actions, [a federal court] does not sit to

review the mere admissibility of evidence under state law.").

Rather, "a state trial court's evidentiary rulings will mandate habeas relief when errors are

so extreme that they constitute a denial of fundamental fairness." <u>Id</u>. Therefore, *habeas* relief is

warranted only where the evidentiary error "played a crucial, critical, and highly significant role in

the trial." <u>Id</u>.; <u>accord</u> <u>Schmidt v. Hubert</u>, Civ. Action No. 05-2168, 2008 WL 4491467, at *14 (W.D.

La. Oct. 6, 2008) ("The standard, then, is not whether the testimony satisfied the <u>Daubert</u> test, which

- 12 -

does not set forth a constitutional rule on the admissibility of scientific evidence, but rather whether the wrongful admission of evidence rendered the trial fundamentally unfair. A trial is fundamentally unfair only if the evidence played a 'crucial, critical, and highly significant role in the trial....'" (citations omitted)); Stogner, 2008 WL 269078, at *13.

In the instant case, petitioner has failed to establish that the state courts' rulings regarding the admissibility of Dr. Hanna's testimony were erroneous, much less so egregiously erroneous as to render his trial fundamentally unfair. Although he notes that her opinion differed from that of Dr. Wilcox with respect to how long it takes for an untreated HIV infection to develop into AIDS, a mere disagreement between experts neither makes one expert's testimony inadmissible nor renders the jury unable to fairly fulfill its function. On the contrary, juries are routinely presented with inconsistent expert testimony which they must consider and weigh in order to reach a verdict. See, e.g., United States v. Sandoval-Mendoza, 472 F.3d 645, 654 (9th Cir. 2006) ("Daubert makes the district court a gatekeeper, not a fact finder. When credible, qualified experts disagree, a criminal defendant is entitled to have the jury, not the judge, decide whether the government has proved its case."); Smith v. BMW North America, Inc., 308 F.3d 913, 921 n.11 (8th Cir. 2002) ("Experts frequently disagree and their opinions, if reliable, are for a jury's consideration."); United States v. Oliver, 278 F.3d 1035, 1043 (10th Cir. 2001) (noting that "it is solely within the province of the jury ... to weigh ... expert testimony"); Revel v. Snow, 664 So.2d 655, 659 (La. App. 3rd Cir. 1995) ("When testimony of expert witnesses differs, it is within the trier of fact's discretion to determine what is the most credible evidence.").

For all of these reasons, this claim should be denied.

- 13 -

### B.  Denial of Challenge for Cause

Petitioner's second claim is that the trial court erred in denying a defense challenge for cause during voir dire.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In the second assignment of error, the defendant contends that the trial court erred in denying his challenge for cause against P.F., a potential juror.  The defendant notes that P.F. did not reply when the trial court asked the jurors whether they had been a victim of a crime.  The defendant further notes that P.F. later during the voir dire process disclosed that he had been molested as a child.  The defendant argues that P.F.'s reluctance to come forward and his ultimate responses to questioning indicate a difficulty by him in setting the incident aside.
>
> The State or the defendant may challenge a juror for cause on the ground that the juror is not impartial, whatever the cause of his partiality, or on the ground that the juror will not accept the law as given to him by the court.  La. Code Crim. P. art. 797(2) & (4).  For a defendant to prove reversible error warranting reversal of both his conviction and sentence, he must establish the following:  (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges. In this case, the defendant exhausted all his peremptory challenges.  Prejudice is presumed when a defendant's challenge for cause is erroneously denied and the defendant exhausts all his peremptory challenges.[FN4]  An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error.  <u>State v. Taylor</u>, 2003-1834, pp. 5-6 (La. 5/25/04), 875 So.2d 58, 62.  A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the prospective juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law reasonably may be inferred.  However, the trial court is vested with broad discretion in ruling on a challenge for cause; its ruling will not be disturbed on appeal absent a showing of an abuse of discretion.  <u>State v. Henderson</u>, 99-1945, p. 9 (La.App. 1st Cir. 6/23/00), 762 So.2d 747, 754, <u>writ denied</u>, 2000-2223 (La. 6/15/01), 793 So.2d 1235.  A trial judge's refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense,

when subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence.  State v. Taylor, 2003-1834 at p. 6, 875 So.2d at 63.

> [FN4]  The rule is now different at the federal level. See U.S. v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (exhaustion of peremptory challenges does not trigger automatic presumption of prejudice arising from trial court's erroneous denial of a cause challenge).

P.F. had a bachelor's degree in history and completed some graduate work on a master's degree in education.  He was employed as an eighth grade teacher.  In response to the State's inquiry as to whether the prospective jurors had any information to share related to the purpose of the voir dire, P.F. stated, "You asked – You didn't ask if anyone else had been molested."  The State noted its hesitancy to ask that direct question.  P.F. then revealed that he was molested but did not report it.  The following colloquy took place between the State and P.F.:

> MR. BARNES:
> Thank you very much.
> I guess the follow-up question to that is can you listen to the evidence in this case and make your decision solely on that evidence, not because of what happened to you but because of what happened as described by that evidence?
>
> MR. P.F.:
> I don't know.
>
> MR. BARNES:
> How long ago did this happen?
>
> MR. P.F.:
> Oh, this was a long time ago.  This was like way over 30 years ago.  I was under five.

MR. BARNES:

... All of us have to put aside sympathies when we're called for a jury, no matter what jury you serve on really ...  What the law says is you can't decide this case based on that sympathy, even though that sympathy for children was there, you've got to decide this case based on the evidence.  So you've got to recognize the fact that you've got a sympathy or some feeling back there, but you've got to make a conscious decision that my decision is going to be based on the evidence, not on my sympathy and not on what happened to me.

Can you do that?  Can you make that conscious decision to do that?

MR. P.F.:

I guess I could.  I guess I could.  I mean, if – I mean it's something just in the back of my head; but it certainly hasn't dominated my life for all these years.

The trial court further reiterated the requirement that the verdict be based on the evidence presented or the lack thereof.  The trial court specifically asked P.F. if he could make a decision based on the facts of this case and P.F. stated, "I think I can do that."

In challenging this prospective juror for cause, the defense attorney admitted that P.F. would try desperately to be fair but noted that he was molested and that it occurred when he was near the same age as the victim was at the time of the alleged offenses.  The State noted that the issue was addressed after P.F. volunteered the information, and P.F. clearly stated he could base his decision on the evidence of this case.  The trial court agreed, noting that P.F. was honest, and concluded that based on his responses his ability to be a fair and impartial juror would not be affected.

Based on our review of P.F.'s responses, we find that the trial court did not abuse its broad discretion in denying the challenge for cause against P.F.  Despite the uncertainty in his initial response, he subsequently demonstrated a willingness and ability to decide the case impartially according to the law and the evidence.  We find that his responses as a whole did not reveal facts from which bias,

prejudice, or inability to render judgment according to the law could
reasonably be inferred.  This assignment of error lacks merit.[14]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning

additional reasons.[15]

Clearly, "[t]he Sixth Amendment right to a fair trial includes the right to an impartial

jury."  Miniel v. Cockrell, 339 F.3d 331, 338 (5th Cir. 2003).  "The standard for determining when

a venire member may be excluded for cause is whether the prospective juror's views would prevent

or substantially impair the performance of his duties as a juror in accordance with his instructions

and his oath."  Soria v. Johnson, 207 F.3d 232, 242 (5th Cir. 2000) (internal quotation marks

omitted).  Moreover, "[a] state trial court's refusal of a petitioner's challenge for cause is a factual

finding entitled to a presumption of correctness."  Miniel, 339 F.3d at 338-39; Soria, 207 F.3d at

242; Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *10 (E.D. La. Oct. 29, 2009).

Therefore, petitioner is entitled to *habeas* relief only if he rebuts the state court's factual finding by

clear and convincing evidence.  See Miniel, 339 F.3d at 340; Soria, 207 F.3d at 242; Anthony, 2009

WL 3564827, at *10.

Here, the trial judge, who observed the exchange with P.F. firsthand, made a

reasonable assessment of his qualifications to serve. Petitioner has presented no evidence showing

that P.F. was in fact unwilling and unable to decide the case impartially according to the law and the

---

[14]  Bella, 2009 WL 3452833, at *3-5; State Rec., Vol. I of VI.

[15]  State v. Bella, 36 So.3d 228 (La. 2010) (No. 2009-KO-2571); State Rec., Vol. I of VI.

evidence, and therefore he has not overcome the presumption of correctness that attaches to the state court decision.  This claim should therefore be rejected.

<u>C.  Ineffective Assistance of Counsel</u>

Petitioner also claims that he received ineffective assistance of counsel.[16]  On post-conviction review, the state district court denied that claim, holding:

> [P]etitioner must establish that his attorney was ineffective.  Thus, Bella must first prove that counsel's performance was deficient, and secondly, that counsel's deficient performance prejudiced his defense. Bella failed to establish facts that would support that counsel's performance was deficient.  Furthermore, he failed to allege facts sufficient to support a claim that he was prejudiced.[17]

Without additional reasons assigned, petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[18] and by the Louisiana Supreme Court.[19]

The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  <u>Jernigan</u>

---

[16]   The Court notes that this is actually the fourth claim listed in the petition.  However, because its resolution impacts the Court's analysis of the next claim challenging the sufficiency of the evidence, it is being considered out of order in this opinion.

[17]   State Rec., Vol. I of VI, Order and Reasons dated September 7, 2011, p. 1.

[18]   <u>State v. Bella</u>, No. 2011 KW 1928 (La. App. 1st Cir. Jan. 17, 2012); State Rec., Vol. II of VI.

[19]   <u>State ex rel. Bella v. State</u>, 97 So.3d 373 (La. 2012) (No. 2012-KH-0348); State Rec., Vol. II of VI.

v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  In order to prove prejudice with respect to *trial* counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  In making a determination as to whether prejudice

occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."   Crockett, 796 F.2d at 793.  On the other hand, to prove prejudice with respect to a claim that *appellate* counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

As noted, petitioner's ineffective assistance of counsel claim was rejected by the state courts in the post-conviction proceedings.  Because such a claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an

*unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  <u>Ibid</u>.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is

substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Petitioner argues that his trial counsel was ineffective for failing "to investigate and proffer evidence of the victim's Mother's ... prior medical records and/or subpoena the victim's mother's doctor."[20]  He opines:  "If the evidence would have been obtained, it could have been used for impeachment purposes, it could have been used to show that the mother initially transmitted HIV/AIDS to the alleged victim, at birth, and to the Petitioner, and/or it could have been used to show that the allegations of rape and/or aggravated oral sexual battery were not true."

With respect to this claim, petitioner has established neither deficient performance nor prejudice.  For example, he has failed to offer any evidence, such as affidavits from his counsel, proving that the victim's mother's medical history was not in fact investigated by defense counsel.  Without such evidence, he has not shown that counsel performed deficiently.  Further, even if petitioner had made that showing, he would additionally have to prove that prejudice resulted.  To make that showing, he must point to evidence in the record demonstrating that further investigation would actually have revealed additional information beneficial to the defense.  <u>See</u> <u>Moawad v.</u>

---

[20]  Rec. Doc. 3, p. 51.

Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  Here, he has not shown that any such beneficial information would have been revealed; rather, his assertions are entirely speculative and unsupported by even a scintilla of evidence.  For example, he has presented no evidence to establish that the victim's mother was HIV+ at the time of victim's birth.  Petitioner's bare speculation on that point is insufficient to prove that prejudice resulted from an allegedly inadequate investigation.  See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).  Moreover, there was no need for additional evidence that the mother was HIV+ at least as early as 1995, *long after* petitioner's birth – she testified as to that fact at trial.[21]  The jury was therefore already aware that the mother was at least potentially the source of the victim's infection.

        The same defect exists with respect to petitioner's contention that his counsel should have subpoenaed and called the mother's physician to testify at trial.  As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable*

---

[21]  State Rec., Vol. IV of VI, trial transcript, pp. 389, 396, and 398-99.

> *to a particular defense.* This requirement applies to both uncalled lay
> and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). Here, petitioner presented no evidence in the state post-conviction proceedings, such as affidavits from the unidentified doctor, demonstrating that he or she would have testified in a manner beneficial to the defense. Therefore, again, petitioner, has clearly failed met his burden with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at

*7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

The Court notes that petitioner also contends that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence to support the convictions. That contention likewise has no merit. It is clear that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753.

The applicable test to be applied in assessing such a claim is instead whether the issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000). In this case, it was not.

On direct appeal in this case, appellate counsel asserted the two claims previously discussed in this opinion, i.e. the Daubert claim and the claim arguing that the denial of the challenge for cause was reversible error. Although those claims ultimately were found to be without merit, a claim challenging the sufficiency of the evidence was certainly no stronger. On the contrary, the elements of the crimes and the identity of the perpetrator were clearly established

- 25 -

through the testimony of the victim himself.[22]  Under both federal constitutional law and Louisiana

state law, the testimony of a victim alone is generally sufficient to establish the elements of a sexual

offense.  Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); Crumholt v. Cain, Civ. Action No.

11-2543, 2011 WL 6329934, at *8 (E.D. La. Nov. 29, 2011), adopted, 2011 WL 6329868 (E.D. La.

Dec. 19, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *26 (E.D. La.

Oct. 29, 2009); State v. Delozier, 151 So.3d 173, 177 (La. App. 3rd Cir. 2014); State v. Orgeron, 512

So.2d 467, 469 (La. App. 1st Cir. 1987).

           In summary, although the issues raised on appeal were weak ones, the proposed

challenge to the sufficiency of the evidence would have been as weak or, more likely, even weaker.

Therefore, this Court therefore cannot say that there is a reasonable probability that petitioner would

have prevailed on appeal if only an insufficient evidence claim had been raised.

           For all of these reasons, petitioner's claim that he received ineffective assistance of

counsel should be denied.

### D.  Sufficiency of the Evidence

           Petitioner's next claim is that the evidence was insufficient to support his convictions.

The state argues this claim is procedurally barred.  The state is correct.

           The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person
> in its custody may not be reviewed by a federal court if the last state
> court to consider that claim expressly relied on a state ground for
> denial of relief that is both independent of the merits of the federal
> claim and an adequate basis for the court's decision.  To satisfy the

---

[22]  See, e.g., State Rec., Vol. IV of VI, trial transcript, pp. 315-24, 333, 336, and 347-48.

> "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted). Moreover, where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned. Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

Here, there is no question that the state courts denied this claim on procedural grounds. On post-conviction review, the state district court held: "A claim of insufficiency of evidence is a matter that is to be raised on appeal; however, petitioner failed to raise this claim in his appeal to the First Circuit Court of Appeal."[23] Without additional reasons assigned, petitioner's related writ applications were then denied by the Louisiana First Circuit Court of Appeal[24] and by the Louisiana Supreme Court.[25]

There is likewise no question that Louisiana's rule that a claim regarding an appealable issue is waived if not asserted on direct appeal is an independent and adequate state court rule sufficient to support a procedural bar in federal court. See, e.g., Hurd v. Cain, Civ. Action No.

---

[23] State Rec., Vol. I of VI, Order and Reasons dated September 7, 2011, p. 1.

[24] State v. Bella, No. 2011 KW 1928 (La. App. 1st Cir. Jan. 17, 2012); State Rec., Vol. II of VI.

[25] State ex rel. Bella v. State, 97 So.3d 373 (La. 2012) (No. 2012-KH-0348); State Rec., Vol. II of VI.

09-3112, 2009 WL 3063354, at *7 (E.D. La. Sept. 23, 2009); Simms v. Cain, Civ. Action No. 07-966, 2008 WL 624073, at *27 (E.D. La. Mar. 4, 2008); Dorsey v. Louisiana, Civ. Action No. 07-036, 2007 WL 1747014, at *4 (E.D. La. June 15, 2007); Hill v. Cooper, Civ. Action No. 04-2588, 2007 WL 458207, at *7 (E.D. La. Feb. 8, 2007); Stevenson v. Cain, Civ. Action No. 06-1244, 2006 WL 2850167, at *14 & n.39 (E.D. La. Oct. 4, 2006).

Where, as here, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

Here, petitioner argues that the cause for his procedural default was his appellate counsel's ineffectiveness in failing to raise this issue on direct appeal. However, as already explained in this opinion, petitioner's counsel was not ineffective in this respect. Where, as here, a petitioner's ineffective assistance of counsel claim is meritless, it cannot serve as cause for a procedural default. Sherill v. Hargett, 184 F.3d 1172, 1176 (10th Cir. 1999); Turner v. Compoy, No.

91-55842, 1993 WL 425372, at *3 n.2 (9th Cir. Oct. 19, 1993); Arita v. Cain, Civ. Action No. 11-636, 2011 WL 4738666, at *11 (E.D. La. Aug. 25, 2011), adopted, 2011 WL 4738658 (E.D. La. Oct. 6, 2011), aff'd, 500 Fed. App'x 352 (5th Cir. 2012), cert. denied, 2013 WL 664688 (U.S. Apr. 15, 2013); Bridges v. United States, No. 04 Civ. 2715, 2005 WL 1798084, at *2 (S.D.N.Y. Aug. 1, 2005); McLaughlin v. Carroll, 270 F. Supp. 2d 490, 516 (D. Del. 2003).

Because the purported ineffectiveness of counsel cannot serve as cause for the default of this claim, and because petitioner has established no other cause for default of the claim, the Court need not consider whether actual prejudice would result from the application of the procedural bar. Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996) ("Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice.").

In that petitioner has not met the "cause and prejudice" test, this Court should consider this claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice."  However, in order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley, 243 F.3d at 220 (citations omitted). Petitioner has not made that showing; on the contrary, the evidence against him, including the victim's compelling testimony, was substantial.  Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, petitioner's claim challenging the sufficiency of the evidence is procedurally barred and should not be considered by this Court.[26]

### E.  Improper Joinder

Petitioner's final claim is that the two offenses in this case were improperly joined for trial before a *twelve*-person jury because, under Louisiana law, the charge of aggravated oral sexual battery was triable only by a *six*-person jury.

Louisiana law provides:

> Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.

La. Code Crim. P. 782(A).  Louisiana law also provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; *provided that the offenses joined must be triable by the same mode of trial.*

La. Code Crim. P. art. 493 (emphasis added).  Petitioner argues that because confinement for a conviction of aggravated rape is necessarily at hard labor but confinement for a conviction of

---

26    Nevertheless, even if the Court were to consider this claim on the merits, it should be rejected. Under the clearly established federal law of Jackson v. Virginia, 443 U.S. 307 (1979), and its progeny, the testimony of a victim alone is generally sufficient to support a conviction of a sexual offense. Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); Crumholt v. Cain, Civ. Action No. 11-2543, 2011 WL 6329924, at *8 (E.D. La. Nov. 29, 2011), adopted, 2011 WL 6329868 (E.D. La. Dec. 19, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *26 (E.D. La. Oct. 29, 2009.

aggravated oral sexual battery is not, the two offenses could not be joined for trial before a twelve-person jury.

However, as the state notes, the Louisiana Code of Criminal Procedure was amended in 1997 to provide:

> Notwithstanding the provisions of Article 493, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.

La. Code Crim. P. art. 493.2.  Petitioner counters that, because conduct on which the charges were based occurred prior to the enactment of Article 493.2 in 1997, Article 493.2 is inapplicable and the two offenses could not be joined for trial in 2008 because each required a different mode of trial.

On post-conviction review, the state district court rejected petitioner's claim, holding:

> La. Code of Criminal Procedure Art. 493.2 sets forth the standard upon which felony offenses may be joined.  According to La. C. Cr. P. 493.2, the state properly joined count one, aggravated rape, with count two, oral sexual battery, and thus, both counts were properly tried before a twelve-member jury.[27]

---

[27]  State Rec., Vol. I of VI, Order and Reasons dated September 7, 2011, pp. 1-2.

- 31 -

Without additional reasons assigned, petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[28] and by the Louisiana Supreme Court.[29]

Petitioner's claim presupposes that he would be entitled to federal relief if, as he argues, the two offenses were improperly joined in violation of state law. However, that underlying assumption is incorrect. As the United States Fifth Circuit Court of Appeals has explained: "Louisiana has created a unique statute about joinder of offenses and 'mode of trial.' Whether the state followed its own procedure is not the concern of a federal habeas court." Manning v. Warden, Louisiana State Pentientiary, 786 F.2d 710, 712 (5th Cir. 1986). Rather:

> The simple fact is that habeas corpus is available only for the vindication of rights existing under federal law; not rights existing solely under the rules of state procedure. When there has been a violation of state procedure, the proper inquiry is to determine whether there has been a constitutional infraction of defendant's due process rights which would render the trial as a whole fundamentally unfair.

Id. at 711-12 (citations and quotation marks omitted). "In order to show that his trial was 'fundamentally unfair,' [a petitioner seeking *habeas corpus* relief based on a misjoinder of offenses] must show some prejudice resulting from the alleged misjoinder." Id. at 712. Here, petitioner does not allege, much less show, the required prejudice necessary to support his claim.

To the extent that petitioner is contending that, because Article 493.2 was not in existence when the offenses were committed, its use in his case also violated the *Ex Post Facto*

---

[28] State v. Bella, No. 2011 KW 1928 (La. App. 1st Cir. Jan. 17, 2012); State Rec., Vol. II of VI.

[29] State *ex rel.* Bella v. State, 97 So.3d 373 (La. 2012) (No. 2012-KH-0348); State Rec., Vol. II of VI.

Clause, that contention has no merit.  The United States Supreme Court has explained:  "Although the Latin phrase *'ex post facto'* literally encompasses any law passed 'after the fact,' it has long been recognized by this Court that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them."  Collins v. Youngblood, 497 U.S. 37, 41 (1990).  The Supreme Court further explained that the *Ex Post Facto* Clause is implicated only if a change in the law disadvantages a criminal defendant by redefining crimes, defenses, or punishment.  Simply put:  retroactive application of a law violates the *Ex Post Facto* Clause only if it:  (1) "punish[es] as a crime an act previously committed, which was innocent when done"; (2) "make[s] more burdensome the punishment for a crime, after its commission"; or (3) "deprive[s] one charged with crime of any defense available according to law at the time when the act was committed."  See id. at 52.  A law changing the number of jurors to be empaneled in a case does not fall within one of those categories, and so it is not subject to the *Ex Post Facto* Clause prohibition. See id. at 50-52 (overruling in part Thompson v. Utah, 170 U.S. 343 (1898)).  Accordingly, the use of Article 493.2 in a case where the underlying offenses were committed prior to its enactment does not warrant federal *habeas corpus* relief.  Pierce v. Warden, Louisiana State Penitentiary, Civ. Action No. 06-1185, 2009 WL 55937, at *13-15 (W.D. La. Jan. 6, 2009).

Lastly, petitioner incorporates within this final claim an argument that relief is warranted as a result of a change in the state law concerning aggravated oral sexual battery, citing Hamm v. City of Rock Hill, 379 U.S. 306 (1964).  However, Hamm is inapposite.  In Hamm, the Supreme Court vacated the petitioners' convictions of state trespass statutes based on their participation in 'sit-in' demonstrations in luncheon facilities of retail stores.  As a result of the

passage of the Civil Rights Act of 1964, their actions were no longer punishable by the time their case reached the Supreme Court. The Supreme Court therefore reasoned that, because the convictions were not final at the time the Civil Rights Act was passed, and because that Act made the petitioners' actions lawful, the Supremacy Clause required that a "contrary state practice or state statute must give way." Id. at 315 ("Rather than a retroactive intrusion into state criminal law this is but the application of a long-standing federal rule, namely, that since the Civil Rights Act substitutes a right for a crime any state statute, or its application, to the contrary must by virtue of the Supremacy Clause give way under the normal abatement rule covering pending convictions arising out of a pre-enactment activity. The great purpose of the civil rights legislation was to obliterate the effect of a distressing chapter of our history. This demands no less than the application of a normal rule of statutory construction to strike down pending convictions inconsistent with the purposes of the Act.").

Petitioner's argument that his situation is analogous is obviously misplaced. First, this case implicates no Supremacy Clause concerns. Second, the petitioner's conduct was not rendered lawful by the change in the law. Petitioner was convicted of aggravated oral sexual battery pursuant to La. Rev. Stat. Ann. § 14:43.4, a statute in effect at the time of the offense in this case. Although that *particular statute* was repealed prior to his indictment and trial, the conduct proscribed in the prior statute remained unlawful; state law was simply amended to incorporate the prohibition into another section of the law. In rejecting a similar claim brought by a different defendant, the Louisiana Third Circuit Court of Appeal explained:

> The Defendant is correct that our legislature repealed the
> criminal provision, designated as aggravated oral sexual battery, in

- 34 -

its 2001 Regular Session, and that the repeal occurred before he was charged but after he committed the offense.  La.R.S. 24:171 provides us with guidance in this situation:

> The repeal of any law shall not have the effect of releasing or extinguishing any penalty, forfeiture or liability, civil or criminal, incurred under such law unless the repealing act expressly so provides, and such law shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.
>
> There is no language, in Acts 2001, Act No. 301, § 2 act that repealed La.R.S. 14:43.4, which provides for the extinguishment of criminal liability for those who violated it before its repeal.  Thus, in accordance with La.R.S. 24:171, the Defendant was properly charged under La.R.S. 14:43.4.  Furthermore, nothing in Act 301, § 2 provides for the repeal to be applied retroactively in order to extinguish criminal responsibility under La.R.S. 14:43.4 for acts committed while that provision was still in effect.

State v. B.A.S., 838 So.2d 155, 157 (La. App. 3rd Cir. 2003).  The court further observed:  "In the same act which repealed the provision, in question, the legislature amended the definition of rape to include oral sexual intercourse and subsumed the offense of aggravated oral sexual battery into the definition of aggravated rape."  Id.  Therefore, the repeal of La. Rev. Stat. Ann. § 14:43.4 did not affect the validity of petitioner's conviction or otherwise entitle him to federal *habeas corpus* relief.  See, e.g., Damm v. Cooper, Civ. Action No. 04-2078, 2005 WL 2106153, at *5-7 (W.D. La. Aug. 8, 2005) (Hill, M.J.) (adopted by Doherty, J., on September 7, 2005).

For all of the foregoing reasons, this claim should be denied.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus*

relief filed by Herman Paul Bella be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within fourteen (14) days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415,

1430 (5th Cir. 1996) (en banc).[30]

New Orleans, Louisiana, this eleventh day of March, 2015.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[30] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.